IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION


| | | |
|---|---|---|
| JOHN PAUL GALBRAITH, #1473442 | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:11cv756 |
| | § | |
| DIRECTOR, TDCJ-CID | § | |

**MEMORANDUM OPINION AND ORDER**

Petitioner John Paul Galbraith, an inmate confined in the Texas prison system, filed a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. He challenges the constitutionality of his convictions, alleging violations concerning the jury, prosecutorial misconduct, trial court errors, ineffective assistance of counsel, cruel and unusual punishment, and double jeopardy.

## I. BACKGROUND

Petitioner is complaining about his Denton County convictions for two counts of indecency with a child, and two counts of aggravated sexual assault of a child – each concerning MG. Cause No. F-2007-01390C. The grand jury also returned a separate indictment alleging that Petitioner had sexually assaulted another child under the age of fourteen, TP. Cause No. F-2007-1541-C. The State consolidated the cases for trial. Although trial counsel moved to sever the two cases, the trial court denied the motion. The jury acquitted Petitioner in the allegations concerning TP. As to the two counts each of aggravated sexual assault and indecency with a child against MG, the jury found Petitioner guilty as charged. It then sentenced him to two life sentences on the aggravated sexual

assault charges and two 20-year sentences on the indecency with a child charges, to be served consecutively.

The Second Court of Appeals affirmed his convictions on November 6, 2008. *Galbraith v. State*, No. 02-08-00024-CR. The Texas Court of Criminal Appeals (CCA) then refused his petition for discretionary review (PDR) on September 16, 2009, *In re Galbraith*, PD-0272-09. The CCA denied his application for state writ of habeas corpus without written order based on the findings of the trial court on October 26, 2011. *Ex parte Galbraith,* Application No. 75,459 at cover.

Petitioner filed the present petition, alleging 24 grounds of relief:

1.  He was denied the right to an impartial jury when a biased juror was seated;

2.  He was denied the right to the jury of his choice when the State struck a juror for cause;

3.  The State withheld exculpatory evidence;

4.  The trial court erred in allowing the outcry testimony;

5.  The State violated his Fifth Amendment Rights by seizing a letter he had written in jail;

6.  The trial court allowed the State's expert witness to bolster the credibility of MG;

7.  Trial counsel was ineffective in failing to object to the State's seizure of the letter that Petitioner wrote while in jail - on the basis that the letter was seized without probable cause or a search warrant;

8.  The use of the disjunctive in the court's charge deprived Petitioner of a fair trial;

9.  Trial counsel was ineffective for failing to object when the Prosecutor called Petitioner a "child molester" and referred to his failure to testify in closing;

10.   Trial counsel was ineffective for failing to protect Petitioner's due process rights when the Prosecution introduced an audio recording of a conversation that he had with his girlfriend engaging in phone sex while he was in jail;

11.   The trial court constructively amended the indictment five days prior to trial without giving Petitioner the opportunity to object to the amendment;

12.   The trial court erred in allowing the State to introduce two separate video outcry statements;

13.   Trial counsel was ineffective for failing to argue that Petitioner would be prejudiced by the joinder of the separate indictments;

14.   The State knowingly used perjured testimony;

15.   Appellate counsel was ineffective for failing to raise a factual insufficiency error on direct appeal;

16.   Appellate counsel was ineffective for failing to raise a legal insufficiency error on direct appeal;

17.   Trial counsel was ineffective for failing to interview witnesses and for failing to call the witnesses with whom he had interviewed to testify at trial;

18.   Trial counsel was ineffective for loudly chastising Petitioner within earshot of the jury for having phone sex with his girlfriend while he was confined in county jail;

19.   Appellate counsel was ineffective for failing to raise nonfrivolous points of error on appeal, i.e., the biased-juror error;

20.   Petitioner's consecutive sentences are cruel and unusual;

21.   Trial counsel was ineffective for failing to interview MG and the State's expert

witnesses.

22.    Trial counsel was ineffective for failing to challenge the State's medical evidence.

23.    Trial counsel was ineffective for failing to introduce evidence showing that the grandmother coerced MG into making false allegations and giving false testimony because Petitioner was planning on moving the children; and

24.    Petitioner's conviction violates double jeopardy.

Respondent provided a Response, asserting that Petitioner's claims are without merit to which Petitioner filed a Reply.

## II. STATEMENT OF FACTS

As noted above, Petitioner was tried for sexual offenses against TP and MG in one trial. The jury found Petitioner "not guilty" of the offense against TP, but found Petitioner "guilty" of the offenses against MG in Cause No. F-2007-01390C.

At trial, 11-year-old TP testified that, when she was 8 years old, she spent the night at her friend, BG's apartment. BG lived in an apartment with her father (Petitioner), MG (her younger sister) and BGG (her brother). TP and BG decided to take a bath. While in the bathtub, Petitioner came into the bathroom and said that he would wash their hair. TP was shocked that a man would be in the bathroom with girls. Petitioner washed BG's hair first while TP tried to move as far away from Petitioner as possible. But then Petitioner washed TP's hair. He then left the bathroom.

After the two girls finished with their bath, they got ready for bed, climbed onto the top bunk of BG's bunk beds, and went to sleep. TP was awakened when Petitioner picked her up and carried her to the living room. Even though she told him to put her down, he placed her on the couch. Petitioner turned on a movie, sat down beside TP and began rubbing her back with his hand under

her shirt. Petitioner told TP that he did that to MG and BG all the time. He then pulled TP's shorts and panties down and threw them onto the floor. TP pulled her knees up and held her knees together tightly. She told Petitioner that she was hungry. Petitioner told TP to put her legs down or he would not get her anything to eat. TP slowly put her legs down, they were spread open, and Petitioner licked her "private," or where she urinated from for approximately 5 seconds before she stopped him by pulling her knees back up. She told him, again, that she was hungry, and Petitioner went to the kitchen and brought her crackers. TP put her shorts back on as Petitioner told her, "Don't tell anybody." TP said that she thought to herself, "I'm going to tell somebody all right." Transcript of Trial vol. 3 at 37-53, *Galbraith*.

Two weeks later, TP told her friend, Christina, and her grandmother what Petitioner had done. TP's grandmother told TP's mother, who called the police. Transcript of Trial vol. 3 at 54-55, 57-58, 63, *Galbraith*. TP eventually told BG what had happened, but BG did not believe her and the two girls stopped being best friends. Transcript of Trial vol. 4 at 56, *Galbraith*. Detective Shane Kizer testified at trial that, although TP's case was investigated in 2004, it was closed because they did not believe there was enough evidence to prove the case at that point. Transcript of Trial vol. 4 at 27-28, *Galbraith*.

Eleven-year-old BG testified that, around December 20, 2006, she saw Petitioner and MG playing on the computer in her father's room through a partially open door. BG saw her father rub MG on her bottom. BG thought it was nasty and that it was unusual, as her sister was 10 and Petitioner was 40. BG watched for about five minutes before Petitioner closed the bedroom door. BG knocked on the door and said that her brother, BGG had to go to the bathroom, but Petitioner just told her, "Take [BGG] out." Transcript of Trial vol. 3 at 118, *Galbraith*. BG then heard the

bathtub water running. Prior to this, BG said she would see MG go into Petitioner's room frequently, and the door would always be closed. She would hear water flowing every once in a while. When MG came out of Petitioner's room, BG pretended to be asleep.

The next morning, BG asked MG if "it has been happening," and MG said, "yes, but don't tell anybody." Transcript of Trial vol. 3 at 87-88, 119, 120-21, *Galbraith*. BG testified that what MG told her was nasty and bad because what Petitioner had done to her was like what he should do to a wife. BG was worried that MG was hurt down inside her. The next day, BG told someone at her school about it and the two sisters spoke with a teacher, Ms. Boone, and the school counselor, Ms. Tanos. BG told her grandmother that MG had been "sexing with Daddy." Transcript of Trial vol. 3 at 122, *Galbraith*.

Ten-year-old MG testified that Petitioner was her father and that she thought her mother had died when she was 2 years old. She said that, on December 20, 2006, she was in Petitioner's room on the computer when he began touching her "private, [her] butt" with his hand, and then started sticking his "wiener" in her butt. She said that Petitioner had done this many times before. She said that on December 20th, after Petitioner finished with her, she took a bath, as she usually did. The next morning, she told her sister about it, but asked BG not to tell anybody because she was afraid she might get sent to an orphanage. MG said that Petitioner had not touched her before TP had come to visit in 2004, but that since then, he had been doing things to her, such as sticking his "wiener in her butt." MG said he had touched her approximately 20 times, that he had put her mouth on his penis about 20 times, that he had put his penis in her private "a couple of times" or "[a]lmost between every day" since TP's visit. She said that Petitioner did the "wiener part" most, that he would put baby oil on his "thing" and that she had seen "white stuff" come out of his penis.

Transcript of Trial vol. 3 at 73-107, *Galbraith*.

Nurse Patricia Sedge testified that there was no evidence of physical injury on MG's vaginal or anal regions. MG's SANE results were classified as "normal." No semen was found on MG's clothing. Transcript of Trial vol. 3 at 8 at 209-29, *Galbraith*.

### III. FEDERAL HABEAS CORPUS RELIEF

The role of federal courts in reviewing habeas corpus petitions by prisoners in state custody is exceedingly narrow. A person seeking federal habeas corpus review must assert a violation of a federal constitutional right. *Lowery v. Collins*, 988 F.2d 1354, 1367 (5th Cir. 1993). Federal habeas corpus relief will not issue to correct errors of state constitutional, statutory, or procedural law, unless a federal issue is also present. *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 479-80, 116 L. Ed.2d 385 (1991); *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996). In the course of reviewing state proceedings, a federal court does not sit as a super state appellate court. *Dillard v. Blackburn*, 780 F.2d 509, 513 (5th Cir. 1986).

The prospect of federal courts granting habeas corpus relief to state prisoners has been further limited by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The provisions of Section 2254(d) provide that an application for a writ of habeas corpus "shall not be granted with respect to any claim that was adjudicated on the merits in state court proceedings unless the adjudication of the claim: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See Williams v. Taylor*, 529 U.S. 362, 402-03, 120 S. Ct. 1495, 1517-18, 146 L. Ed.2d 389 (2000); *Childress v. Johnson*, 103 F.3d 1221,

1224-25 (5th Cir. 1997). The statutory provision requires federal courts to be deferential to habeas corpus decisions on the merits by state courts. *Moore v. Cockrell*, 313 F.3d 880, 881 (5th Cir. 2002).

A decision by a state court is "contrary to" the Supreme Court's clearly established law if it "applies a rule that contradicts the law set forth in" the Supreme Court's cases. *Williams*, 529 U.S. at 405-06, 120 S. Ct. at 1519-20. A federal court's review of a decision based on the "unreasonable application" test should only review the "state court's 'decision' and not the written opinion explaining that decision." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*). "Under § 2254(d)(1)'s 'unreasonable application' clause, then, a federal habeas corpus court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411, 120 S. Ct. 1522-23. Rather, that application must be objectively unreasonable. *Id.* 529 U.S. at 409, 120 S. Ct. at 1521. The standard is satisfied only if "reasonable jurists considering the question would be of one view that the state court ruling was incorrect." *Davis v. Johnson*, 158 F.3d 806, 812 (5th Cir 1998) (internal quotation marks and citations omitted).

The trial court's factual findings are entitled to a presumption of correctness unless the petitioner can rebut the presumption with clear and convincing evidence to the contrary. *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). A federal district court must be deferential to state court findings supported by the record. *See Pondexter v. Dretke*, 346 F.3d 142, 149-152 (5th Cir. 2003). The AEDPA has modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas "retrials" and to ensure that state court convictions are given effect to the extent possible under law. *Beel v. Cone*, 535 U.S. 685, 693, 122 S. Ct. 1843, 1849, 152 L. Ed.2d 914 (2002); *see Williams*, 529 U.S. at 404, 120 S. Ct. at 1519.

A state application that is denied without written order by the Texas Court of Criminal Appeals, as in the present case, is an adjudication on the merits. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997) (holding a "denial" signifies an adjudication on the merits while a "dismissal" means the claim was declined on grounds other than the merits). Additionally, federal habeas relief is foreclosed if a claim (1) is procedurally barred as a consequence of a failure to comply with state procedural rules, *Coleman v. Thompson*, 501 U.S. 722, 111 S. Ct. 2546, 115 L. Ed.2d 640 (1991); (2) seeks retroactive application of a new rule of law to a conviction that was final before the rule was announced, *Teague v. Lane*, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed.2d 334 (1989); or (3) asserts trial error that, although of constitutional magnitude, did not have a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993).

In the context of § 2254(d), the deferential standard that must be accorded to counsel's representation must also be considered in tandem with the deference that must be accorded state court decisions, which has been referred to as "doubly" deferential. *Harrington v. Richter,* 562 U.S. 86, 105, 131 S. Ct. 770, 788, 178 L. Ed.2d 624 (2011). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Id.* "If the standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d), as amended by AEDPA, "stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings. It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this court's precedents.

It goes no farther." *Id*. "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id*.; *see also Morales v. Thaler*, 714 F.3d 295, 302 (5th Cir. 2013). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Richter*, 562 U.S. 98, 131 S. Ct. at 784.

AEDPA also states that the state court's factual findings "shall be presumed to be correct" unless the petitioner carries "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254( e)(1). This presumption of correctness also applies to unarticulated findings that are necessary to the state court's conclusions of mixed law and fact. *Valdez*, 274 F.3d at 948 n. 11. This presumption is especially strong where, as in this case, the trial judge and the state habeas judge are the same. *Miller-El v. Johnson*, 261 F.3d 445, 449 (5th Cir. 2001) (citing *Clark v. Johnson*, 202 F.3d 760, 764, 766 (5th Cir. 2000), *cert. denied*, 531 U.S. 831, 121 S. Ct. 84, 148 L. Ed.2d 46 (2000)).

Further, the evidence upon which a petitioner would challenge a state court fact finding must have been presented to the state court, except for the narrow exceptions contained in § 2254(e)(2). Because a federal habeas court is prohibited from granting relief unless a decision was based on "an unreasonable determination of the facts in light of the evidence presented in the state court proceeding, " it follows that demonstrating the incorrectness of a state court fact finding based upon evidence not presented to the state court would not be helpful to a federal habeas petitioner. 28 U.S.C. § 2254(d); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). If a habeas petitioner failed

to fully develop the factual bases of his claims in state court, he is precluded from further factual development in federal court unless (1) his claims rely on a new rule of constitutional law or a factual predicate previously undiscoverable through the exercise of due diligence; and (2) he establishes by clear and convincing evidence that, but for constitutional error, no reasonable factfinder would have found him guilty. 28 U.S.C. § 2254(e)(2). Failing to meet this standard of diligence will bar a federal evidentiary hearing in the absence of a convincing claim of actual innocence that can only be established by newly discovered evidence. *Williams*, 529 U.S. at 436, 120 S. Ct. at 1490. Even if a petitioner can meet the foregoing standard, it is within this court's discretion to deny a hearing if sufficient facts exist to make an informed decision on the merits. *Clark v. Johnson*, 227 F.3d 273, 284-85 (5th Cir. 2000).

## IV. FAILURE TO EXHAUST AND PROCEDURAL DEFAULT

Petitioner makes several claims that are unexhausted and procedurally barred. In issues 1 and 2, Petitioner complains about challenges to the makeup of the jury. Issue 6 concerns a challenge to the testimony of a state expert witness. In Issue 11, Petitioner complains about an amendment to the indictment made five days before trial. He complains about the introduction of outcry statements in issue 12. In issue 14, Petitioner complains of the prosecution's failure to correct misleading testimony. However, he failed to raise these issue on direct appeal. The Fifth Circuit has explained that a petitioner who fails to present his claims on direct appeal cannot seek federal habeas relief until the claims have been raised and adjudicated in a state habeas proceeding. *Ames v. Middlebrooks*, 369 F.2d 113, 115 (5th Cir. 1966). Texas law requires a petitioner to raise records-based claims on direct appeal or forfeit review of the claims. *Ex parte Cruzata*, 220 S.W.3d 518, 520 (Tex. Crim. App. 2007). The Fifth Circuit recognizes that "this rule is an 'adequate state ground

capable of barring federal habeas review.'" *Scheanette v. Quarterman*, 482 F.3d 815, 827 (5th Cir. 2007) (quoting *Busby v. Dretke*, 359 F.3d 708, 719 (5th Cir. 2004). Petitioner procedurally defaulted these claims by not raising them on direct appeal. *Id.*

When a petitioner procedurally defaults a claim in state court, federal habeas review is available only if he can show cause and prejudice. *Coleman*, 501 U.S. at 749-50, 111 S. Ct. at 2564-65. The procedural bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Id.*; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001). The state habeas court considered Petitioner's procedural default in the state habeas proceedings:

1.     As to Applicant's Grounds One, Two, Five, Six, Eight, Twelve, and Fourteen, because these Grounds were not raised on direct appeal, they are not now cognizable on Application for Writ of Habeas Corpus and should be denied. *Ex parte Cruzata*, 220 S.W.3d 518 (Tex. Crim. App. 2007); *Ex parte Twyman*, 716 S.W.2d 951, 952-53 (Tex. Crim. App. 1986).

2.     As to Applicant's Grounds One, Two, Five, Six, Eight, Twelve, and Fourteen, Applicant makes bare, conclusory assertions in his Memorandum, without argument or raising them as actual grounds for review in his Application. Also, Applicant makes bare claims as to errors [rendering] his counsel ineffective, without supporting argument or evidence of prejudice; blanket claims that counsel was ineffective will not support relief on habeas corpus, and these claims should also be denied on that basis. *Ex parte Maldonado*, 688 S.W.2d 114, 116 (Tex. Crim. App. 1985).

3.     As to Applicant's Grounds One, Two, Five, Six, Eight, Twelve, and Fourteen, even if construed as ineffective assistance claims, Applicant has not demonstrated ineffective assistance of counsel and his claims should also be denied on that basis. *Strickland* 466 U.S. at 687; *Bone*, 77 S.W.3d at 833; *Martinez*, 195 S.W.3d at 721.

4.     Each of Applicant's Grounds alleges multiple, multifarious bases for relief in violation of Texas Rule of Appellate Procedure 73.1 and thus should be denied on that basis. Tex. R. App. P. 73.1; *Ex parte Blacklock*, 191 S.W.3d

718 (Tex. Crim. App. 2006).

*Ex parte Galbraith*, Application No. 75,459 at 582-83.

It could be construed that Petitioner attempts to show cause for his default as it concerns his first issue concerning the makeup of the jury. Although not clear, he may be arguing that the default in issue 1 was due to ineffective assistance of counsel.

A review of the record shows that he states, "Applicant argues his 6th and 14th amendment rights, judicial error, ineffective counsel, and ineffective appellate counsel." *Ex parte Galbraith*, Application No. 75,459 at 6. It is well-settled, however, that habeas petitioners may not raise multiple grounds for relief under one heading. The state habeas trial court concluded that, because Petitioner alleged "multiple, multifarious bases for relief," his writ should be denied on that basis. *Ex parte Galbraith*, Application No. 75,459 at 583. Texas Rule of Appellate Procedure 73.1 requires applicants to use "the form prescribed by the Court of Criminal Appeals," which requires each ground to be set out separately. Tex. R. App. Proc. 73.1. Petitioner's failure to follow Rule 73.1 deprived the State the opportunity to develop and consider the claim in his state habeas proceedings. Again, the state habeas trial court concluded, " even if construed as ineffective assistance claims, Applicant has not demonstrated ineffective assistance of counsel and his claims should also be denied on that basis. *Strickland* 466 U.S. at 687; *Bone*, 77 S.W.3d at 833; *Martinez*, 195 S.W.3d at 721." *Ex parte Galbraith*, Application No. 75,459 at 582-83.

Petitioner has not excused the default by showing cause for the default and prejudice, or by showing a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 749-50, 111 S. Ct. at 2564-65; *Finley*, 243 F.3d at 220. Furthermore, he has not shown that he is actually innocent. *Schlup v. Delo,*

513 U.S. 298, 324, 115 S. Ct. 851, 865-66. He has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. He has also failed to show that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

Petitioner also failed to properly raise issues 19 - 24 in state habeas proceedings. Petitioner's original petition for state habeas raised 18 grounds for relief, filed on August 19, 2010. Two months later, he filed an amended application, but added no new grounds for relief. On November 29, 2010, however he added issue 19. He added issue 20 on February 14, 2011, issues 21-23 on March 31, 2011, and issue 24 on October 24, 2011. The record shows that the state habeas court did not consider these later-filed claims because they were not brought in either Petitioner's original or amended application. He also failed to serve the amendments on the Denton County District Attorney.

The record shows that the prosecuting attorney and the state habeas court met the mandatory deadlines established by Article 11.07 of the Code of Criminal Procedure (clerk must forward application to the prosecuting attorney upon receipt of the state habeas application, and prosecuting attorney must respond within 15 days of receiving the application; the state habeas court then has 35 days in which to appropriately respond). The prosecuting attorney received Petitioner's original application on August 23, 2010, and responded on September 7, 2010 - within the 15-day deadline.

The state habeas trial court then entered its order designating issues on September 10, 2010 - well within the 35-day deadline. *Ex parte Galbraith*, Application No. 75,459 at 169-70. Petitioner's attempts to add grounds 19 - 24 were never acknowledged by the State. Article 11.07 does not contemplate adding new grounds after the state habeas trial court issues its order designating issues. Furthermore, Petitioner failed to properly serve the new grounds on the prosecuting attorney and the state habeas trial court. The district clerk is not responsible for serving pleadings on the parties. Tex. Rule Civ. Proc. 21, 21(a).

Petitioner filed his amended grounds after the order designating issues was issued. He failed to alert the state habeas trial court or the prosecuting attorney. Thus, grounds 19 - 24 in his state writ were waived. The same grounds are now unexhausted and procedurally defaulted. In the instant federal writ. Section 2254 does not allow a petitioner to file a petition for writ of habeas corpus unless he is "in custody" and has exhausted his available state remedies. 28 U.S.C. § 2254(b)(1). A state prisoner must exhaust all remedies available in state court before proceeding in federal court unless circumstances exist that render the state corrective process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b), ( c). In order to exhaust properly, he must "fairly present" all of his claims to the state court. *Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 512, 30 L. Ed.2d 438 (1971). In Texas, all claims must be presented to and ruled on by the Court of Criminal Appeals of Texas (CCA). *Richardson v. Procunier*, 762 F.2d 429, 430-31 (5th Cir. 1985); *Deters v. Collins*, 985 F.2d 789 (5th Cir. 1993). This exhaustion doctrine was judicially crafted on federalism grounds to protect the state courts' opportunity to confront and resolve initially any constitutional issues arising within their jurisdiction and also to limit federal interference in the state adjudicatory process. *See id.* at 225. Finally, if one or more of the petitioner's claims is exhausted

and one or more of the claims is unexhausted, it is a "mixed" petition, and the entire petition may be dismissed for failure to exhaust state remedies. *Rose v. Lundy*, 455 U.S. 509, 510, 192 S. Ct. 1198, 71 L. Ed.2d 379 (1982).

In the present case, Petitioner failed to properly raise these issues in his state habeas proceedings. He has presented, for the first time, issues to the federal courts before the state court has had the appropriate opportunity to review it, and if necessary, correct any constitutional errors. Thus, the claims are unexhausted.

The claims are also procedurally barred. "A procedural default . . . occurs when a prisoner fails to exhaust available state remedies and 'the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred.'" *Nobles v. Johnson*, 127 F.3d 409, 420 (5th Cir. 1997), *citing Coleman*, 501 U.S. at 735 n.1, 111 S. Ct. at 2557 n.1. If Petitioner presented the claims at this time to the Court of Criminal Appeals in another state writ application, the court would find the claims to be procedurally barred under the Texas abuse of the writ doctrine. Tex. Code Crim. Proc. Ann. art. 11.07 § 4 (Vernon Supp. 2004); *Ex parte Whiteside*, 12 S.W.3d 819, 821 (Tex. Crim. App. 2000). Thus, Petitioner's claims would be barred from federal habeas review under the federal procedural default doctrine. *Fearance v. Scott*, 56 F.3d 633, 642 (5th Cir. 1995), *cert. denied*, 515 U.S. 1153 (1995) (the Texas abuse of the writ doctrine is an adequate procedural bar for purposes of federal habeas review). The procedural bar may be overcome by demonstrating either cause and prejudice for the default or that a fundamental miscarriage of justice would result from the court's refusal to consider the claim. *Id.*; *Finley v. Johnson*, 243 F.3d 215, 220 (5th Cir. 2001).

Petitioner has failed to overcome the procedural bar by demonstrating either cause and

prejudice for the defaults or that a fundamental miscarriage of justice would result from the court's refusal to consider the claims. *Fearance,* 56 F.3d at 642; *Finley,* 243 F.3d at 200. Accordingly, the claims are procedurally barred from federal habeas review.

In sum, Petitioner defaulted issues 1, 2, 6, 11, 12, and 14 because they are all records-based claims that are barred if not raised on direct appeal. Petitioner failed to exhaust and procedurally defaulted issues 19 - 24 because he failed to raise them properly in state court proceedings.

## V. *BRADY* CLAIM

Petitioner asserts that the State failed to disclose material evidence that was favorable to his defense. Specifically, he claims that the prosecutor withheld the recordings of two phone calls that Petitioner made while he was in prison that would have explained the letter that he sent to his aunt. In the letter to his aunt, Petitioner said, "no witness, no case." The State introduced the letter as an admission of guilt. He asserts that had the two phone conversations been turned over to defense and used at trial, they would have shown that Petitioner was not admitting guilt, but simply repeating what his attorney had said to him. The letter introduced at trial was a redacted version of Petitioner's jailhouse letter to his aunt Marilyn:

> Thank you for your call. . . I hope what [MG] said is true, that Glenda [(Petitioner's mother-in-law and MG's grandmother)] doesn't want me to go to prison. I would even strike a deal with her if I could just walk away from this. If Glenda said she felt I didn't do this, it may help. Not allowing [MG] to testify will totally drop this case. No witness, no case. I would give up my parental rights to her if she just drop[s] it. . . . I wish she would just drop it and prevent [MG] from testifying. Said it was a mistake and it didn't happen. I would honestly walk away and rebuild my life - living in Europe. . . . I would be willing to talk to Glenda if she's will[ing] to visit - we could set terms to agree on. . . . I really hope Glenda will make a deal with me if she truly feels what I'm led to believe.

*Ex parte Galbraith*, Application No. 75,459 at 253. Petitioner wholly fails to discuss which

information in the phone calls would contradict or explain the letter that he wrote to his aunt. In his affidavit, Petitioner's trial counsel discussed this allegation:

> A typical example of Galbraith's attempts to manipulate the system was his "no witness, no case" mantra. During one of our conversations, when I told him that his letters were being construed as attempts to tamper with a witness by the State, Galbraith told me that his daughter (the victim) was simply confused and didn't want to testify against her daddy, and that he was simply trying to spare his daughter from having to testify against him when she didn't want to. Of course, the victim was in fairly constant contact with the State, who conveyed to me that the victim was neither confused nor unwilling to testify. During this conversation, Galbraith asked me if it was true that if the victim didn't testify or wasn't available, if that would mean the prosecution couldn't continue. I told him that was possible, but not certain, to which he responded something to the effect of, "ok, no witness, no case." My response was that was not exactly true. Over the course of the rest of my representation, the State provided me letters written by Galbraith to various witnesses stating that I had told him "no witness, no case" and that I had told him to tell the witnesses to find ways to convince the victim not to testify. During trial, Galbraith asked me if I remember that "no witness, no case" had been my idea, and that he couldn't be accused of witness tampering because he was simply relying on my advice. I pointed out that, unlike Galbraith's family members, I was not the type of person that would allow him, because he was smarter than me, to convince me that something had been my idea when, in fact, that was not true. This was a common theme in my representation.

*Ex parte Galbraith*, Application No. 75,459 at 253. The state habeas court also considered this issue (citations to the record omitted):

> As to Applicant's Ground Three, Applicant sent a letter and made phone calls from the jail that could be described as attempts to tamper with witnesses, in particular, the victim, into not testifying through his belief that, without a witness, the State would not have a case. Further, Applicant knew that his phone calls from the jail could be recorded and used by the State. . . . The complained-of evidence in Applicant's Ground Three was not exculpatory and therefore, not subject to *Brady v. Maryland* requirements.

*Ex parte Galbraith*, Application No. 75,459 at 574, 583. These findings were adopted by the CCA when it denied Petitioner's state habeas application. The findings are entitled to a presumption of

correctness, which must be rebutted by clear and convincing evidence. *Neal*, 239 F.3d at 696.

In *Brady v. Maryland*, the Supreme Court held "that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97, 10 L. Ed.2d 215 (1963). The prosecution "need not disgorge every piece of evidence in its possession . . . [but] has an affirmative duty to disclose to the defense evidence that is favorable to the accused and material to guilt." *Rector v. Johnson*, 120 F.3d 551, 558 (5th Cir. 1997). In addressing a *Brady* claim, the Fifth Circuit has explained that a defendant must prove:

> (1) the prosecution suppressed evidence;
>
> (2) the suppressed evidence was favorable to the defense; and
>
> (3) the suppressed evidence was material to the defense.

*Derden v. McNeel*, 938 F.2d 605, 617 (5th Cir. 1991). The test for materiality is whether there is a "reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id*. The materiality of the evidence is evaluated in light of the entire record. *See Lagrone v. State*, 942 S.W.2d 602, 615 (Tex. Crim. App. 1997). The Fifth Circuit also requires that a petitioner show that "discovery of the allegedly favorable evidence was not the result of a lack of due diligence. *Rector*,120 F.3d at 558. The state does not have a duty to disclose information that is available from other sources. *Id*. at 559. Additionally, the mere possibility that a piece of information might have helped the defense does not establish materiality in the constitutional sense. *Id*. at 562.

Petitioner has failed to show the substance of the phone calls. Thus, he has not shown that the evidence was exculpatory. He has failed to identify evidence that was material and favorable to

his defense that was suppressed. He has failed to establish the *Brady* requirements, presenting nothing other than his conclusory allegation, which is insufficient for habeas relief. *Ross v. Estelle,* 694 F.2d 1008, 1012 (5th Cir. 1983) ("absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *United States v. Woods*, 870 F.2d 285, 288 (5th Cir. 1989); *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982). Moreover, the state habeas court considered this claim and found that no *Brady* violation occurred. Petitioner has failed to meet the *Brady* requirements showing that the State erred in withholding favorable evidence. *Derden*, 938 F.2d at 617.

When the CCA denied Petitioner's state habeas application, it rejected this claim. The findings are entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence. *Neal*, 239 F.3d at 696. He has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## VI.  ADMISSION OF EVIDENCE

Petitioner alleges that the trial court erred in allowing the introduction of two outcry witness videos without first establishing the unavailability of the outcry witnesses. However, admission of

evidence is a state issue and this court should not review the state court's interpretation of its own law. *Weeks v. Scott*, 55 F.3d 1059, 1063 (5th Cir. 1995). To obtain relief on a state evidentiary issue, petitioner must show that the alleged error rendered the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). To determine whether a trial court error rendered the trial fundamentally unfair, the test is whether there is a reasonable probability that the verdict would have been different had the trial been conducted "properly." *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). Applying a federal harmless error standard on federal habeas review, the trial court must have "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 1722, 123 L. Ed.2d 353 (1993). Under this standard, Petitioner is not entitled to federal habeas relief based on trial error unless he can establish that the error resulted in actual prejudice. *Id.*, 507 U.S. at 637, 113 S. Ct. at 1722.

The record shows that Julie Kahn, a forensic interviewer with the Children's Advocacy Center, said that she interviewed MG. Exhibits 25 and 26 from the State were recordings from MG's interview with Kahn. Trial counsel for Petitioner argued that, since MG had already testified, admitting the videos was the State's attempt to "bolster" MG's testimony, in violation of Article 38.072. The State argued that MG's taped interview was admissible as prior consistent statements. It was the contention of the State that Petitioner's cross-examination of MG caused the jury to believe that MG had changed her story as a result of her conversations with Kahn and law enforcement. Petitioner's trial counsel then argued that MG's statement should not come in as the outcry statement under 38.072. The trial court overruled Petitioner's objections.

In the instant petition, Petitioner asserts that the trial court erred in failing to first determine

whether MG was unavailable under Rule 38.071 of the Code of Criminal Procedure. However, the trial court rulings refer to Rule 38.072, which allows the hearsay statements of a child victim to be introduced at trial, provided the child is available to testify and is tendered without restriction for cross-examination. *See Villalon v. State*, 791 S.W.2d 130, 136 (Tex. Crim. App. 1990). There are no references to rule 38.071, which allows a child to testify via videotape or closed-circuit television, provided the opponent is given the opportunity to conduct cross-examination. *Hightower v. State,* 822 S.W.2d 48, 53 (Tex. Crim. App. 199). Since MG testified, Rule 38.071 is inapplicable.

Petitioner has failed to show the trial court erred. Even if it had erred, state evidentiary rulings become matters for federal habeas corpus review only when they are of such magnitude as to constitute a denial of fundamental fairness under the due process clause. *Evans v. Thigpen*, 809 F.2d 239, 242 (5th Cir. 1987). Petitioner has failed to show a violation of his due process rights that rendered the trial "fundamentally unfair." *Bailey*, 744 F.2d at 1168. He has failed to show a violation of his constitutional rights. The state habeas court found that "Applicant's Ground Four is a purely statutory claim and is not cognizable on Application for Writ of Habeas Corpus. *Ex parte Pruett*, 207 S.W.3d 767 (Tex. Crim. App. 2005)." *Ex parte Galbraith*, Application No. 75,459 at 575, 583.

When the CCA denied Petitioner's state habeas application, it rejected this claim. The findings are entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence. *Neal*, 239 F.3d at 696. Petitioner has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner is also not entitled to relief because he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25.

  He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## VII.  SEIZURE OF PETITIONER'S LETTER

Petitioner claims that the State violated his Fifth Amendment rights when it seized the letter that he had written to his aunt while he was incarcerated.  The record shows that Billy Cordell, who is in charge of the inmate mail at Denton County Jail, seized Petitioner's letter because he thought that Petitioner was attempting to coerce or tamper with the victim MG.  A petitioner's Fifth Amendment right attaches to a custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966).  Petitioner's letter was voluntarily written, without any allegations that law enforcement made him write it.  The state habeas court also considered this issue (citations to the record omitted):

> 11.  As to Applicant's Ground Five, Applicant wrote a letter from jail in which he attempted to keep the victim witness from testifying.  Applicant wrote this letter on his own, without prompting from law enforcement, and not in response to any law enforcement question.

> * * *

> 11.  The admission of the complained-of evidence in Applicant's Ground Five did not violate Applicant's Fifth Amendment rights.  *Miranda v. Arizona*, 384 U.S. 436, 442-57 (1966).

> 12   No search warrant or probable cause was required to confiscate the letter Applicant mailed from the jail.  *Hightower*, 629 S.W.2d at 920.

> 13.  The confiscation of the letter related to a reasonable security purpose in the

23

jail in which Applicant was incarcerated. *Id.*; *Martinez v. U.S.*, 416 U.S. 396, 412-13 (1979).

14. No Fourth Amendment seizure took place when the letter was forwarded to the District Attorney, because the letter was voluntarily written by Applicant, no threat or coercion was used to obtain it, and it was taken pursuant to reasonable regulations designed to promote the discipline of the incarcerating institution. *See Stroud v. U.S.*, 251 U.S. 15, 21-22 (1919).

*Ex parte Galbraith*, Application No. 75,459 at 575, 583-84. When the CCA denied Petitioner's state habeas application, it rejected this claim. The findings are entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence. *Neal*, 239 F.3d at 696. Petitioner has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner is also not entitled to relief because he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## VIII. COURT'S CHARGE

Petitioner complains that the court's charge allowed a conviction based upon a disjunctive finding between two separate offenses. He claims that the court's charge to Count I gave the jury the option to convict if it found either "genital to genital" contact or "genital to anus" contact. However, Petitioner is mistaken. The charge read:

Now, if you find from the evidence beyond a reasonable doubt that on or about the

1st day of December, 2006, in Denton County, Texas, the Defendant, JOHN PAUL GALBRAITH, did then and there intentionally or knowingly cause the sexual organ of said [MG], a child younger than 14 years of age who was not the spouse of said defendant, to contact the sexual organ of the defendant; then you will find the defendant guilty of Aggravated Sexual Assault, as charged in Count I of the indictment.

Clerk's Record at 112.  Count I says nothing about anal contact.  The state habeas court considered this issue (citations to the record omitted):

> 14. As to Applicant's Ground Eight, both the original indictment and the amended indictment charged Applicant with two counts of aggravated sexual assault and two counts of indecency with a child.  Contrary to Applicant's claim, the application paragraphs of the jury charge allowed the jury to reach a finding of guilt only if the jury found that Applicant contacted the "sexual organ" of his victim, and not the anus.  The jury could not have found Appellant guilty if they believed Applicant had contacted his victim's anus, and not her sexual organ.
>
> * * *
>
> 18. There was no variance between the pleading and the proof required for a finding of guilt and there was no possibility for a less-than-unanimous verdict.

*Ex parte Galbraith*, Application No. 75,459 at 576, 584.  When the CCA denied Petitioner's state habeas application, it  rejected this claim.  The findings are entitled to a presumption of correctness, which must be rebutted by clear and convincing evidence.  *Neal*, 239 F.3d at 696. Petitioner has failed to rebut the presumption of correctness to which the state findings are entitled.  *Valdez*, 274 F.3d at 947.   Petitioner is also not entitled to relief because he has not shown that the state court proceedings resulted in  a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103

F.3d at 1224-25.   He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at  784.

## IX.   INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner claims, in numerous grounds for relief, that his trial counsel was ineffective.

**Legal Standard**

A petitioner who seeks to overturn his conviction on the grounds of ineffective assistance of counsel must prove his entitlement to relief by a preponderance of the evidence. *James v. Cain*, 56 F.3d 662, 667 (5th Cir. 1995).   In order to succeed on a claim of ineffective assistance of counsel, a petitioner must show that "counsel's representation fell below an objective standard of reasonableness," with reasonableness judged under professional norms prevailing at the time counsel rendered assistance. *Strickland  v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984).   The standard requires the reviewing court to give great deference to counsel's performance, strongly presuming counsel exercised reasonable professional judgment. *Id.*, 466 U.S. at 690, 104 S. Ct. at 2066.    The right to counsel does not require errorless counsel; instead, a criminal defendant is entitled to reasonably effective assistance. *Boyd v. Estelle*, 661 F.2d 388, 389 (5th Cir. 1981). *See also Rubio v. Estelle*, 689 F.2d 533, 535 (5th Cir. 1982);  *Murray v. Maggio*, 736 F.2d 279 (5th Cir. 1984).   Secondly, the petitioner  "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.   Petitioner must "affirmatively prove," not just allege, prejudice. *Id.*, 466 U.S. at 693, 104 S. Ct. at 2067.   If he fails to prove the prejudice component, the court need not address the question of counsel's performance.  *Id.*, 466 U.S. at 697,

104 S. Ct. 2052.

**Failure to Object**

Trial counsel's failure to object does not constitute deficient representation unless a sound basis exists for objection. *See Emery v. Johnson*, 139 F.3d 191, 198 (5th Cir. 1997) (a futile or meritless objection cannot be grounds for a finding of deficient performance). Even with such a basis, however, an attorney may render effective assistance despite a failure to object when the failure is a matter of trial strategy. *See Burnett v. Collins*, 982 F.2d 922, 930 (5th Cir. 1993) (noting that a failure to object may be a matter of trial strategy as to which courts will not second guess counsel). To succeed on such a claim, a petitioner must show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Failure to make frivolous objections does not cause counsel's performance to fall below an objective level of reasonableness. *See Green v. Johnson*, 160 F.3d 1029, 1037 (5th Cir. 1998). On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

***Failure to Object to the State's Seizure of Petitioner's Letter Written to his Aunt***

Petitioner alleges that his trial counsel was ineffective for failing to object to the admission of the letter that he wrote to his aunt in which he said, "no witness, no case." Counsel objected to the letter on the grounds that it had been improperly authenticated. The trial court overruled his objection.

The seizure of jailhouse letters does not violate the Fourth Amendment, *Busby v. Dretke*, 359 F.3d 708, 715-16 (5th Cir. 2004), nor does it violate state law, *Hightower v. State*, 629 S.W.2d 920, 925 (Tex. Crim. App. 1981). Furthermore, this is another complaint concerning a state law error as to the admission of evidence, which does not implicate constitutional rights. *McGuire*, 502 U.S. at 67-68, 112 S. Ct. 480. The state habeas court considered this issue (citations to the record omitted):

13.    As to Applicant's Ground Seven, the sponsoring witness to the personal letter that Applicant mailed from jail testified that as part of the jail's monitoring of inmate mail, which is routinely done with all mail, he saw Applicant's letter, which caused him to become concerned about witness tampering. The letter was forwarded to the district attorney. No threats or coercion were used to obtain the letter. The Denton County Jail has reasonable regulations regarding the reading of outgoing inmate mail that are designed to promote the discipline of that institution.

* * *

17.    Applicant has not demonstrated by a preponderance of the evidence on any of his ineffective assistance claims that counsel's conduct fell below an objective standard of reasonableness or that this incompetence caused the defendant prejudice. *Ex parte Martinez*, 195 S.W.3d 713, 721 (Tex. Crim. App. 2006).

*Ex parte Galbraith*, Application No. 75,459 at 576, 584. Petitioner has failed to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has  has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner is not entitled to relief for the additional reason that

he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

### Failure to Object to Prosecutor's Comments

Petitioner claims that trial counsel was ineffective when he failed to object when the prosecutor called him a "child molester," and when he referred to Petitioner's failure to testify. A review of the record shows that the prosecutor asked the venire whether they could give Petitioner probation after a finding of guilt. Specifically, he said, "Is everybody sitting there thinking, whoa, I'm not going to give probation to a child molester?" Transcript of Trial vol. 2 at 70, *Galbraith*. Petitioner fails to identify a particular comment concerning his failure to testify. Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. This issue was considered in Petitioner's state habeas proceedings (citations to the record omitted):

> 15. As to Applicant's Ground Nine, the transcript of voir dire does not show that the State's counsel referred to Applicant as a "child molester." Rather, in the one instance in which the prosecutor used that term, it was in a global fashion not directed at Applicant, asking the members of the venire panel whether they could consider the full range of punishment in the case. The trial court did not find the tone or substance of the prosecutor's objectionable and would have corrected the problem had the tone of the prosecutor been such that she was referring to Applicant himself. Further, the trial court has known the prosecutor, Karen Anders, professionally for several years and knows her to be a consummate professional who does not resort to such tactics as Applicant alleges. Thus, the trial court does find Applicant's contentions in

Ground Nine lacking in credibility.

16.     Also in regard to Applicant's Ground Nine, the record does not reveal any instance in which the State referred to Applicant's failure to testify during closing argument or at any other point in the trial. In fact, the record demonstrates that during the time at which the allegedly improper referral to Applicant's failure to testify was made, State's counsel was rebutting Applicant's closing arguments and making clear that Applicant had engaged in manipulation of his victim in an attempt to prevent her from testifying, not referring to Applicant's failure to testify.

*Ex parte Galbraith*, Application No. 75,459 at 576-77. In his affidavit filed in the state habeas proceedings, trial counsel stated, "I did not object to the comments made on voir dire because I did not find them objectionable and, in fact, would have used the same language to gauge the jury's ability to consider the full range of punishment." *Id.* at 258. Petitioner has failed to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Petitioner has failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Finally, Petitioner has not shown that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

### Failure to Object to Introduction of Audio Recording of Jailhouse Phone Sex

Petitioner complains that trial counsel failed to protect his rights to due process. Specifically, he argues that counsel failed to properly object when the prosecution introduced the tape of

Petitioner and his girlfriend engaging in phone sex while Petitioner was being held in the Denton County Jail. He asserts that the tape was not properly authenticated and was admitted to bolster the credibility of witnesses.

Again, this is another complaint concerning a state law error of evidence admissibility, and does not implicate constitutional rights. *McGuire*, 502 U.S. at 67-68, 112 S. Ct. at 480. The state habeas court considered this issue (citations to the record omitted):

> 17. As to Applicant's Ground Ten, the sponsoring witness to the telephone call, Kimberly McDaniel, was a previous victim of sexual assault at the hands of Applicant and was very familiar with him. McDaniel testified that she was familiar with Applicant's voice, had listened to the recording prior to testifying, and believed the voice on the recording to be Applicant's voice. The jury could reasonably believe that she was familiar with Applicant's voice given the entire force of her testimony.
>
> * * *
>
> 20. The audio recording of Applicant's phone call from jail to his fiancé was properly authenticated because the sponsoring witness properly identified his voice and the jury reasonably could believe that the evidence had been properly authenticated. *Druery v. State*, 225 S.W.3d 491, 502 (Tex. Crim. App. 2007).

*Ex parte Galbraith*, Application No. 75,459 at 577, 585. The record shows that the recordings were properly authenticated by one who was familiar with Petitioner's voice. Further, Deputy Davis testified that it was Petitioner on the recordings with a girl named, "Inga." Transcript of Trial vol. 7 at 24-25, *Galbraith*. Petitioner has failed to show deficient performance.

Furthermore, Petitioner fails to identify the witnesses to whom he is referring when he claims that the State was allowed to "bolster the credibility of its witness and taint the jury" with recordings that are not criminal in nature. Federal courts do not "consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . mere conclusory allegations do not raise a constitutional

issue in a habeas proceeding." *Smallwood v. Johnson*, 73 F.3d 1343, 1351 (5th Cir. 1996) (quoting *Ross*, 694 F.2d at 1011-12. (5th Cir. 1983)). Conclusory claims are insufficient to entitle a habeas corpus petitioner to relief. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799. The prosecution has great latitude during punishment as to what it can introduce. Tex. Code Crim. Proc. art. 37.07 § 3. Petitioner has failed to show a constitutional violation based on the playing of the tape.

Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. He has failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

### Failure to Effectively Argue for Severance

In Issue 13, Petitioner claims that trial counsel failed to argue how Petitioner would be prejudiced by the joinder of the cases. A review of the record shows that the trial court granted the state's motion to consolidate the cases concerning TP and MG. Trial counsel filed a motion to sever, arguing that the cases were "not factually related," and happened in two different places, done in "different manner and means." Transcript of Trial vol. 2 at 10-11, *Galbraith*. The trial court denied the motion.

This issue was raised on direct appeal. The appellate court concluded that the allegations in the related case were admissible to refute the theory that the victims' stories were influenced by other

people. The appellate court also noted that the consolidation did not interfere with trial counsel's ability to defend Petitioner against MG's allegations.

Because the appellate court found the consolidation of cases to be proper, Petitioner cannot show that trial counsel's representation was deficient. He also cannot show prejudice since he was found "not guilty" of the charges involving TP. The state habeas court also considered this issue and found (citations to record omitted):

> 20. As to Applicant's Ground Thirteen, Applicant's main defense at trial, which he instructed his trial counsel to proceed with, was that MG, his daughter, was not credible as a witness and victim and was lying about what happened to her. The trial court finds credible Applicant's trial counsel's testimony that Applicant directed counsel to pursue this defense, and in fact, each defensive theory and action pursued. Applicant has not presented any credible evidence that he was prevented from further developing his defense. Further, during the hearing on Applicant's Motion to Sever, the trial court understood Appellant's counsel to be" making the argument that joinder of the cases would be unfairly prejudicial, regardless of whether trial counsel used the words, "unfairly prejudicial."

> * * *

> 24. Applicant's counsel was not ineffective for failing to argue how joinder would have been prejudicial, because such an argument would have been futile due to the meritlessness of the underlying clam that joinder was prejudicial. *Strickland*, 466 U.S. at 687; *Bone*, 77 S.W.3d at 833; *Ex parte Martinez*, 195 S.W.3d at 721.

*Ex parte Galbraith*, Application No. 75,459 at 578, 585. Petitioner has failed to show that the trial court would have sustained the objection and that it would have actually changed the result of his trial. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also has failed to rebut the presumption of correctness to which the state findings are entitled.

*Valdez*, 274 F.3d at 947. In each of his failure-to-object issues, Petitioner is not entitled to relief for the additional reason that he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## Failure to Interview Defense Witnesses

Petitioner claims that his trial counsel failed to interview defense witnesses. He submitted affidavits from the following: Carolyn Galbraith, his mother; James Robert Galbraith, his brother; Diane Davis-Tarvin, a friend of the family; Thomas Sean Martin, a friendly of the family; Cheryl Ann Bryant, the children's babysitter; and Marilyn Gibson, Petitioner's aunt who received the jailhouse letter. Each affidavit was presented to the state habeas court except for the one from his brother, James Robert Galbraith. The court notes that the affidavit from James Galbraith is unsigned, and it is new evidence not presented to the state habeas court; thus, it cannot be considered in this action. *Pinholster*, — U.S. —, 131 S. Ct. at 1398.

As it concerns the other affidavits, most of their testimony was going to be that Petitioner had a bad relationship with his mother-in-law, Glenda David. Trial counsel noted that "the only information our witnesses could provide were stories of the many times in the past the grandmother had let people know she didn't like Galbraith." *Ex parte Galbraith*, Application No. 75,459 at 284. "We couldn't even find a witness that could give an objective opinion that this grandmother was of

a character anywhere close to the type that would coach a child to make such a horrible accusation against an innocent man." *Id.* Trial counsel investigated the witnesses Petitioner asked him to, and determined that their testimony would not be helpful to defense.

"[C]omplaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." *Buckelew v. United States*, 575 F.2d 515, 521 (5th Cir.1978). Further, the presentation of witness testimony is essentially strategy and, thus, within the trial counsel's domain. *Alexander v. McCotter*, 775 F.2d 595, 602 (5th Cir.1985). A petitioner must overcome a strong presumption that his counsel's decision in not calling a particular witness was a strategic one. *Murray v. Maggio, Jr.*, 736 F.2d 279, 282 (5th Cir. 1984). Where "the only evidence of a missing witness's testimony is from the defendant," claims of ineffective assistance are viewed with great caution. *United States v. Cockrell*, 720 F.2d 1423, 1427 (5th Cir.1983), *cert. denied*, 467 U.S. 1251, 104 S. Ct. 3534, 82 L. Ed.2d 839 (1984).

The fact that Petitioner had a poor relationship with MG's grandmother does not establish that the grandmother convinced MG to lie. Trial counsel made a conscious and strategic decision not to pursue this particular trial strategy. On habeas review, federal courts do not second-guess an attorney's decision through the distorting lens of hindsight, but rather, the courts presume that counsel's conduct falls within the wide range of reasonable professional assistance and, under the circumstances, that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. 2065. Trial counsel's strategic choices are virtually unchallengeable after a thorough investigation into the law and relevant facts are made. *Strickland,* 466 U.S. at 690, 104 S. Ct. at 2066. Petitioner has failed to overcome the presumption that, under the circumstances, the

challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. He has also failed to prove that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Petitioner raised this issue in his state habeas proceedings. In response to his allegations, trial counsel filed an affidavit addressing his complaints. The state habeas court considered the issue (citations to the record omitted):

> 22. As to Applicant's Ground Seventeen, the court finds credible the affidavit of Applicant's trial counsel, Derek Adame, and further finds the affidavits presented by Applicant not credible. The court finds that given the evidence in the record showing that Applicant attempted to manipulate witness testimony, the affidavits produced in his Application for Writ of Habeas Corpus lack credibility and do not comport with the credible facts relayed by defense counsel in his affidavit. Applicant attempted to manipulate witnesses into not testifying and even asked trial counsel to admit that he was ineffective. When told by trial counsel that his phone calls from the jail were being recorded, Applicant's response was to actually escalate his manipulative behaviors.

> 23. Further, in regard to Applicant's Ground Seventeen, the Court finds that defense counsel met with many potential witnesses and thoroughly investigated Applicant's case. However, none of these potential witnesses could testify to any personal knowledge of the sexual assault, because the acts were alleged to have occurred in a locked bedroom where only Applicant and his daughter were present. None of the names on the list of potential witnesses provided by Applicant's family were people who could testify that the allegations were untrue.

> 24. Further, in regard to Applicant's Ground Seventeen, the Court finds that at trial, Applicant instructed trial counsel in how to conduct his cross-examinations and in which witnesses to call. Each and every one of these decisions was vetted through Applicant. Before passing witnesses, trial counsel would ask Applicant if he wanted counsel to ask any other questions. Trial counsel asked Applicant which ones he wanted counsel to call to testify, and Applicant instructed counsel which ones to call and which ones not to call.

25.     Applicant has not presented any credible evidence of what other witnesses would have testified to that would have resulted in a different verdict or punishment. Although Applicant argues that these witnesses would have been able to testify that Applicant's daughter had been manipulated and coerced into making her allegations of sexual abuse, there is no credible evidence that this is true. Trial counsel met with Applicant's potential witnesses, diligently, and discovered as part of trial strategy that they would not have been favorable witnesses for Appellant.

26.     The Court has known Applicant's trial counsel, Derek Adame, professionally for many years now and finds him to be a highly competent and thorough attorney. The Court finds that none of Applicant's allegations of failure to investigate or call witnesses are credible. The Court further finds that the overall performance of trial counsel and appellate counsel's representation of Applicant was thorough, competent, and of high quality.

*Ex parte Galbraith*, Application No. 75,459 at 579-581. Petitioner has failed to overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. He has not shown deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

**"Belittling" of Petitioner**

Petitioner claims in his 18th issue that trial counsel yelled at, cursed at, and belittled him in the presence of the jury during a recess. This event happened after the prosecution played the recording of his phone sex sessions with his fiancé while he was in the Denton County Jail. However, he has offered nothing other than conclusory allegations and bald assertions, which are

insufficient to support a petition for a writ of habeas corpus. *Woods*, 870 F.2d at 288; *Schlang*, 691 F.2d at 799.

In response to this issue being raised in the state habeas proceedings, trial counsel addressed it in his affidavit:

> As to the allegation . . . that I berated him within earshot of the jury, this is once again a complete falsehood. . . . During the punishment portion of the trial, the State offered a taped phone conversation Galbraith had from the jail with his fiancé, which, if memory serves, had occurred only days before possibly during the trial itself. What occurred on that phone call can only be described as "phone sex." . . . I can safely say that in my sixteen years of trying criminal jury trials, I have never had an experience like the one I had watching the jury's collective reaction as they listened to this tape. When the tape was over, the judge excused the jury from the courtroom for a break, and I followed Galbraith into the holding cell. This is apparently where I am alleged to have screamed at him in front of the jury. . . . Galbraith asked me what I thought, I told him I thought the trial was over. I told him that judging by the jury's reaction to the tape, we would be lucky to end up with anything other than a life sentence. I did not lose my temper with him; there wasn't any point. I did tell him that what he had done had been colossally stupid, especially since he knew all his calls were being recorded. . . . I left the holding cell . . . to speak to Galbraith's family. They were visibly upset by both what they had heard on the tape and by the obvious effect it had on the jury. . . . I told them something to the effect that I had "let him have it" for doing something that stupid. No one was present in or near the holding cell to hear our conversation, and the only reason Galbraith's family knew that we had discussed the issue is because I told them. The assertion that this conversation happened in earshot of the jury, or anyone else for that matter, is a complete fabrication.

*Ex parte Galbraith*, Application No. 75,459 at 256-58. The state habeas court considered the issue (citations to record are omitted):

> 27.     As to Applicant's Ground Eighteen, during the punishment phase of the trial, the State offered a recorded telephone "phone sex" conversation Applicant had from the jail with his fiancé that had occurred only days before, which was later admitted into evidence. After the recording was played for the jury, the Court excused the jury from the courtroom for a break, and trial counsel and Applicant went in to the holding cell adjacent to the courtroom.

> 28.     At one end of the courtroom, next to the jury box, is a door that leads back

to the jury room. On the other side of the courtroom, next to defense counsel's table, is a door leading to the holding cell. When people are in the jury room and the holding cell, they are separated by approximately 30 yards of courtroom, offices, elevator shafts, hallways, and walls made of brick and concrete. When people are in the holding cells and the courtroom gallery, they are separated by a solid metal door, bulletproof glass, a hallway, and a heavy wooden door leading to the courtroom. Thus, it is impossible to hear conversations between the jury room and the holding cells. It is very difficult to hear even muffled conversations if two people are speaking in loud tones when each of the two doors to the holding cell are cracked.

29.     It is standard practice in Denton County never to move a defendant on trial between the holding cell and the courtroom if the jury is in the jury box. This procedure was adhered to in Applicant's trial.

30.     After the jury was taken out for their break, and the courtroom was cleared, trial counsel followed Applicant into the holding cell and the doors were closed behind them. None of the conversation between Applicant and his attorney was able to be heard by the jury, as the jury had already been led out of the courtroom. This Court finds Applicant's assertions that trial counsel was yelling and belittling him are false.

*Ex parte Galbraith*, Application No. 75,459 at 581-582. Petitioner has offered nothing to overcome the state habeas court's findings of fact that "it is impossible to hear conversations between the jury room and the holding cells," and that "[n]one of the conversation between Applicant and his attorney was able to be heard by the jury." *Ex parte Galbraith*, Application No. 75,459 at 582.

Petitioner has failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also has failed to rebut the presumption of correctness to which the state findings are entitled. *Valdez*, 274 F.3d at 947. Petitioner is not entitled to relief for the additional reason that he has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, or that the

decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams*, 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## Claims of Ineffective Assistance of Counsel on Appeal

Petitioner also claims that his appellate counsel was ineffective in several instances. The Fifth Circuit has held that to prevail on a claim of ineffective assistance of counsel on appeal, the petitioner must make a showing that had counsel performed differently, there would have been revealed issues and arguments of merit on the appeal. *Sharp v. Puckett*, 930 F.2d 450, 453 (5th Cir. 1991), *citing Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2065, 80 L. Ed.2d 864 (1984). In a counseled appeal after conviction, the key is whether the failure to raise an issue worked to the prejudice of the defendant. *Sharp*, 930 F.2d at 453. This standard has been affirmed by the Supreme Court. *See Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed.2d 756 (2000) (holding that the petitioner must first show that his appellate attorney was objectively unreasonable in failing to find arguable issues to appeal, and also a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal). *See also Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed.2d 389 (2000); *Briseno v. Cockrell*, 274 F.3d 204, 207 (5th Cir. 2001).

Furthermore, an appellate counsel's failure to raise certain issues on appeal does not deprive an appellant of effective assistance of counsel where the petitioner did not show trial errors with arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973). Appellate counsel is not required to consult with his client concerning the legal issues to be presented on appeal. *Id*. at 1197.

An appellate attorney's duty is to choose among potential issues, using professional judgment as to their merits – every conceivable issue need not be raised on appeal. *Jones v. Barnes*, 463 U.S. 745, 749, 103 S. Ct. 3308, 3311-12, 77 L. Ed.2d 987 (1983).

### Failure to Raise Factual Sufficiency on Appeal

Petitioner asserts that his appellate counsel was ineffective for failing to argue that the evidence was factually insufficient to support the conviction. Specifically, he claims that MG's testimony was inconsistent, and there was no physical evidence of abuse.

A federal habeas corpus court reviewing a petition under 28 U.S.C. § 2254 asks only whether a constitutional violation infected the petitioner's state trial. *See Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 480, 116 L. Ed.2d 385 (1991); *Pemberton v. Collins*, 991 F.2d 1218, 1233 (5th Cir. 1993). The Texas factual-sufficiency standard of review is based on state law. *See Clewis v. State*, 922 S.W.2d 126, 131-34 (Tex. Crim. App. 1996). A federal habeas court does not sit as a super state supreme court for review of issues decided by state courts on state law grounds. *Smith v. McCotter*, 786 F.2d 697, 700 (5th Cir. 1986). On federal habeas corpus review, the evidentiary sufficiency of a state court conviction is governed by the legal-sufficiency analysis set forth in *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed.2d 560 (1979), which reflects the federal constitutional due process standard. See *Woods v. Cockrell*, 307 F.3d 353, 358 (5th Cir. 2002); *West v. Johnson*, 92 F.3d 1385, 1394 (5th Cir. 1996)(explaining that, "in challenges to state convictions under 28 U.S.C. § 2254, only *Jackson* need be satisfied, even if state law would impose a more demanding standard of proof") (quotation and citations omitted). Because a challenge to the factual sufficiency of the evidence does not implicate a constitutional issue, federal habeas corpus review is unavailable for this claim.

***Failure to Raise Legal Sufficiency on Appeal and Issues of Merit***

Next, Petitioner claims that appellate counsel was ineffective for failing to argue that the evidence was legally insufficient. He also faults appellate counsel for failing to raise meritorious issues. According to Petitioner, appellate counsel could have argued that BG lied on the witness stand. He contends that appellate counsel could also have argued that the trial court abused its discretion in allowing inadmissible testimony – MG's testimony – to be introduced through another witness without first determining whether MG was available to testify. He complains that the prosecutor used leading questions, and that the State's expert witness testified to unreliable scientific theories and bolstered MG's testimony. He also thought appellate counsel could have argued that his letter was seized without probable cause, the State withheld exculpatory evidence, there was no physical evidence of abuse, and the testimony was inconsistent.

As noted above*, Jackson* is used for evaluating the legal sufficiency of the evidence. Under *Jackson*, the reviewing court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. In conducting that review, a federal habeas corpus court may not substitute its view of the evidence for that of the fact finder, but must consider all of the evidence in the light most favorable to the verdict. *See Weeks v. Scott*, 55 F.3d 1059, 106 (5th Cir. 1995).

The State was required to establish that Petitioner intentionally or knowingly caused MG's sexual organ to contact with Petitioner's sexual organ when MG was under the age of 14 to prove Petitioner's guilt of Count I. Tex. Penal Code Ann §22.021(a)(1)(B)(iii), (a)(2)(B) (West 2006). To prove Count II, the State was required to establish that Petitioner intentionally or knowingly

caused MG's mouth to contact Petitioner's sexual organ when she was under the age of 14.  *Id*.

§ 22.021(a)(1)(B)(v), (a)(2)(B).  The State was required to establish that Petitioner intentionally and

knowingly engaged in sexual contact with MG, a child younger than 17, by causing MG to touch his

genitals to prove Petitioner's guilt of Count III.  *Id*. § 21.11(a)(1), (c).  To prove Count IV, the State

had to establish that Petitioner intentionally and knowingly engaged in sexual contact with MG, a

child younger than 117, by touching MG's genitals.  *Id*.  § 22.11(a)(1), (c).  The requisite mental

state for indecency with a child may be inferred from the defendant's conduct, remarks, and all

surrounding circumstances.  *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex. Crim. App. 1981).

A review of the record shows that MG, who was 10 years old at the time of trial, testified that

Petitioner touched her "privates" with his hand, he "put his penis" in her front part, and made her

put her mouth on his "thing."  Transcript of Trial vol. 3 at 73-107, *Galbraith*. This testimony

establishes the proof necessary.  Thus, any argument appellate counsel would have advanced in this

vein would have been frivolous.  Counsel cannot be held to be ineffective for failing to argue

frivolous claims.  *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir. 1990).  Moreover, the state habeas

court considered this issue and found, "Applicant has failed to show by a preponderance of the

evidence that appellate counsel was ineffective for failing to raise factual and legal insufficiency

points of error; bare assertions and conflicting evidence are not enough to prevail on insufficiency

claims. *Johnson v. State,* 23 S.W.3d 1, 8 (Tex. Crim. App. 2000); *Jackson v. Virginia*, 443 U.S. 307,

326 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)." *Ex parte Galbraith*,

Application No. 75,459 at 586.

Petitioner has failed to show that his appellate attorney was objectively unreasonable in

failing to find arguable issues to appeal.  He has also failed to show a reasonable probability that, but

43

for his counsel's alleged unreasonable failure to file a merits brief raising these issues, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285, 120 S. Ct. at 764. He has failed to show deficient performance, or that there is a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Petitioner has also failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784.

## X. CONCLUSION

Petitioner failed to exhaust several claims and they are now barred from federal habeas review. He has not shown that the State failed to disclose exculpatory evidence or that the trial court erred in admitting evidence. He has failed to show that alleged trial court errors "had substantial and injurious effect or influence in determining the jury's verdict." *Brecht*, 507 U.S. at 637-38, 113 S. Ct. 1721-22. Petitioner failed to show that his letter was seized in violation of his constitutional rights or that the court's charge was improper. He has failed to prove that there is a reasonable probability that, but for trial and/or appellate counsel's alleged unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. He has also failed to overcome the presumption that, under the circumstances, the challenged actions of his trial counsel might be considered sound trial strategy. *Id.*, 466 U.S. at 689, 104 S. Ct. at 2065. Further, in each of his claims, Petitioner has failed to rebut the presumption of correctness owed to the trial court's factual findings with clear and convincing evidence to the contrary. *Valdez*, 274 F.3d at 947.

In sum, Petitioner has not shown that the state court proceedings resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court of the United States, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. *Williams,* 529 U.S. at 402-03, 120 S. Ct. at 1517-18; *Childress*, 103 F.3d at 1224-25. He has failed to show that there was no reasonable basis for the state court to deny relief. *Richter*, 562 U.S. at 98, 131 S. Ct. at 784. Accordingly, his petition should be denied and his case dismissed.

It is therefore

**ORDERED** that the petition for a writ of habeas corpus is **DENIED** and Petitioner's case is **DISMISSED** with prejudice. It is further

**ORDERED** that all motions not previously ruled on are hereby **DENIED**.

**SIGNED this 1st day of April, 2015.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE